UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZERO MOTORCYCLES, INC., <br><br>Plaintiff, <br><br>v. <br><br>ZERO LABS GROUP, LLC, <br><br>Defendant. | Case No. 22-cv-04034-SVK <br><br>**ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br>Re: Dkt. No. 25 |

Plaintiff Zero Motorcycles, Inc. ("Plaintiff" or "Zero Motorcycles") manufactures and sells electric motorcycles, and it also "offer[s] electrification technology consulting, design, engineering and manufacturing services for third parties." Dkt. 21 ("First Amended Complaint" or "FAC") ¶¶ 5, 12. Defendant Zero Labs Group, LLC ("Defendant" or "Zero Labs") manufactures and sells electric vehicle conversion services as well as "an electric vehicle platform." *Id.* ¶ 6. In this lawsuit, Plaintiff claims that Defendant has infringed Plaintiff's federally registered trademarks, violated Plaintiff's trademark rights under California common law, engaged in unfair competition, and should have Defendant's own federal trademark registration and applications cancelled. *Id.* ¶¶ 1-68.

Defendant moved to dismiss Plaintiff's original complaint. Dkt. 17. Rather than opposing that motion to dismiss, Plaintiff filed the FAC. Dkt. 21. Defendant now moves to dismiss the FAC on the grounds that (1) the complaint fails to state a cause of action and is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6), and (2) Plaintiff fails to plead sufficient facts to satisfy the heightened pleading standard of Rule 9(b). Dkt. 25. Plaintiff filed an opposition to the motion to dismiss (Dkt. 37), and Defendant filed a reply (Dkt. 38). All parties have consented to the jurisdiction of a magistrate judge. Dkt. 12, 13.

This matter is suitable for determination without oral argument. Civ. L.R. 7-1(b). For the reasons that follow, the motion to dismiss is **GRANTED IN PART and DENIED IN PART**.

## I. BACKGROUND

The following background discussion is based on the allegations of the FAC. Plaintiff alleges that it owns a trademark in the term ZERO MOTORCYCLES, which was federally registered in 2009 and became incontestable in 2014. FAC ¶ 2. Plaintiff also uses other marks incorporating the word "ZERO," many of which are also registered. *Id.* ¶¶ 3, 15. The FAC collectively refers to Plaintiff's trademarks as the "ZERO Marks." *Id.* Plaintiff claims that since at least October 2013, it has also used a "Z" logo on the masthead of its website and otherwise in connection with the promotion and sale of electric vehicle goods and services under the ZERO Marks. *Id.* ¶ 4.

Plaintiff alleges that after it established the ZERO Marks and Z logo in the U.S. "marketplace for electric vehicles and EV technologies," Defendant adopted and used a confusingly similar ZERO LABS mark and Z logo. *Id.* ¶ 20 and Ex. A. Defendant has applied for and obtained federal registrations for "the Zero Labs (and/or ZeroLabs) trademark" and has recently applied to register its Z logo design. *Id.* ¶ 32.

In December 2021, Plaintiff's counsel sent Defendant a cease and desist letter and filed Petitions to Cancel two of Defendant's trademark registrations. *Id.* ¶¶ 35, 36.

Plaintiff filed the original complaint in this action on July 8, 2022. Dkt. 1. After Defendant filed a motion to dismiss (Dkt. 17), Plaintiff filed the FAC (Dkt. 21). The FAC contains causes of action for: (1) federal trademark infringement; (2) California trademark infringement; (3) California unfair competition; and (4) cancellation of federal trademark applications and registration. Dkt. 21. Defendant now moves to dismiss the FAC. Dkt. 25.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. In ruling on a motion to dismiss, courts may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). In deciding whether the plaintiff has stated a claim, the

court must presume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).

If a motion to dismiss is granted, the court must grant leave to amend unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

**B.     Rule 9(b)**

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). A plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this heightened pleading standard, the allegations must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged "so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotations marks omitted). In other words, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns*, 567 F.3d at 1124 (internal quotation marks and citations omitted). The plaintiff must also set forth "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks and citation omitted).

3

### III. REQUEST FOR JUDICIAL NOTICE

Defendant requests that the Court take judicial notice of nine documents. Dkt. 25-11. Exhibits 1 through 5 to the Request for Judicial Notice are Trademark Status & Document Retrieval ("TSDR") status pages for Defendant's trademark registrations. Dkt. 25-2 to 25-6. Exhibit 6 is an Office Action issued by the United States Patent and Trademark Office (USPTO) concerning one of Plaintiff's trademark applications, and Exhibit 7 is Plaintiff's response to the Office Action. Dkt. 25-7 to 25-8. Exhibits 8 and 9 are other documents submitted by Plaintiff to the USPTO. Dkt. 25-9 to 25-10.

A court may take judicial notice of "a fact that is not subject to reasonable dispute" because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). A court must take judicial notice of such a fact "if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). In appropriate circumstances, USPTO records are properly the subject of judicial notice. *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 145 (N.D. Cal. 2020).

In its motion to dismiss, Defendant cites the documents that are the subject of the request for judicial notice primarily to support its contention that Plaintiff's trademarks are weak and entitled to a narrow scope of protection, as evidenced by statements Plaintiff made to the USPTO. *See, e.g.,* Dkt. 25 at 2, 4-6, 9, 12. Plaintiff argues that the Court should decline to take judicial notice of the documents submitted by Defendant because judicial notice is only permitted for "a fact that is not reasonably subject to dispute." Dkt. 36 at 1. According to Plaintiff, Defendant seeks to obtain judicial notice of these documents "so Defendant can use its interpretation of disputed facts as substantive evidence" in support of the motion to dismiss. *Id.* The Parties disagree about the binding effect of statements made in USPTO filings. *See* Dkt. 25-11 at 4 (argument by Defendant that Court "may take judicial notice of [Plaintiff's] statements [to the USPTO] and may bind Zero Motorcycles to its admissions"); Dkt 36 at 3 (argument by Plaintiff that its statements to the USPTO do not bind it as judicial admissions).

In the context of the present motion to dismiss, judicial notice of the USPTO documents is

4

1  not appropriate because the fact for which Defendant offers them—to prove that Plaintiff's
2  trademarks are weak—is disputed.  "[W]hile [] USPTO records may be subject to judicial notice,
3  they are noticeable only for the limited purpose of demonstrating that the filings and actions
4  described therein occurred on certain dates." *Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992,
5  997 (N.D. Cal. 2014); *see also Threshold Enters.*, 445 F. Supp. 3d at 146 ("[j]ust because the
6  document itself is subject to judicial notice does not mean that every assertion of fact within that
7  document is judicially noticeable for its truth") (internal quotation marks and citations omitted).  A
8  "hotly contested" question such as whether a plaintiff's marks are generic "cannot be answered
9  solely by reference to information gleaned from judicially noticeable documents" *Pinterest*, 15 F.
10 Supp. 3d at 997 (citation omitted).  Similarly, because Defendant attempts to use Plaintiff's
11 statements to the USPTO primarily to challenge Plaintiff's allegations in the FAC that bear on the
12 strength of its marks, the USPTO documents do not concern a "fact that is not subject to
13 reasonable dispute," and those documents therefore are not the proper subject of judicial notice.
14     Accordingly, although the USPTO documents may be noticeable for other purposes, they
15 are not properly noticed for the purposes for which Defendant now offers them, and the Court
16 does not rely upon them in deciding the motion to dismiss.  Therefore, Defendant's request for
17 judicial notice is **DENIED**.

## IV. DISCUSSION

### A. Claim for Federal Trademark Infringement

20     The elements of a claim for trademark infringement under federal law are:  (1) the plaintiff
21 owns the trademark at issue; (2) the defendant used in commerce without authorization any
22 reproduction, counterfeit, copy, or colorable imitation of the mark in connection with the sale,
23 offering for sale, distribution, or advertising of any goods and services; and (3) the defendant's use
24 of the mark is likely to cause confusion, mistake, or deception.  *See* 15 U.S.C. §§ 1114; *see also*
25 *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007); *Iglesia Ni Cristo v.*
26 *Cayabyab,* No. 18-cv-00561-BLF, 2019 WL 3997474, at *7 (N.D. Cal. Aug. 23, 2019).
27     Here, Defendant argues that Plaintiff's claim for federal trademark infringement should be
28 dismissed because Plaintiff has not and cannot plead facts establishing a likelihood of confusion.

Dkt. 25 at 8-21.

In the Ninth Circuit, likelihood of confusion is assessed using the eight-factor test set forth in *AMF, Inc. v. Sleekcraft Boats*:  (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.  599 F.2d 341, 348-49 (9th Cir. 1979).  Defendant addresses each of the *Sleekcraft* factors, arguing that (1) the marks used by Plaintiff and Defendant are dissimilar; (2) Plaintiff's marks are weak; (3) Plaintiff and Defendant use the marks in connection with different goods and services; (4) Plaintiff does not allege a single instance of actual confusion; (5) Plaintiff has not pleaded facts showing that Defendant uses the same specific marketing channels; (6) the typical buyer for the Parties' goods and services are sophisticated and therefore less likely to be confused; (7) Plaintiff fails to plead facts supporting its allegations that Defendant had a bad faith intent; and (8) Plaintiff fails to plead facts showing that either Party is likely to expand its business to compete with the other.  Dkt. 25 at 8-21.

Notably, Defendant asserts these arguments on likelihood of confusion in the context of a motion to dismiss, rather than at a later point in the case when the record is more fully developed. "Analysis of the *Sleekcraft* factors most typically occurs in the context of a summary judgment motion, or at trial" due to "the intensely factual nature of trademark disputes."  *Benchmark Capital Holdings Co., LLC v. Benchmark Co., LLC*, No. C 11-4883 RS, 2012 WL 13041640, at *4 (N.D. Cal. Jan. 3, 2012) (internal quotation marks and citations omitted); *see also Rearden LLC v. Rearden Commerce, Inc.,* 683 F.3d 110, 1202, 1209, 1216 (9th Cir. 2012) (likelihood of confusion inquiry is "flexible" and "intensely factual").  "Thus, while it may be appropriate, particularly in light of *Twombly* and *Iqbal*, to consider whether a complaint pleads sufficient facts to support a plausible claim of likelihood of confusion, [the party moving to dismiss] faces a significant challenge to show that the non-existence of such a likelihood can be determined as a matter of law at the pleading stage."  *Benchmark Capital*, 2012 WL 13041640, at *4.

Zero Labs has not met that burden.  In the FAC, Plaintiff pleads a protectable trademark

interest in its Zero-based marks and Z logo (*see, e.g.,* FAC ¶ 15) and Defendant's use of ZERO LABS and Z logo trademarks that Plaintiff claims are similar to its own marks (*see, e.g., id.* ¶¶ 6, 20, and Ex. A). The FAC also alleges facts sufficient to plead a likelihood of confusion, including facts regarding Defendant's offer of what Plaintiff contends are related electric vehicle services in similar marketing channels as those used by Plaintiff. *See, e.g., id.* ¶¶ 20-31. Although on a complete factual record a trier of fact may ultimately conclude there is no likelihood of confusion, or perhaps such a determination could be made based on undisputed facts at the summary judgment stage, the FAC pleads facts sufficient to make out a plausible claim of federal trademark infringement.

The motion to dismiss Plaintiff's claim for federal trademark infringement is therefore **DENIED**.

### B. Claim for California Trademark Infringement

Defendant seeks to dismiss Plaintiff's second cause of action for trademark infringement under California law. Dkt. 25 at 21-22. Defendant argues that the FAC is not clear about whether this claim is based on statute (California Business & Professions Code § 14200 *et seq.*) or common law. *Id.* at 21. In its opposition to the motion to dismiss, Plaintiff clarifies that the claim "alleges trademark infringement only under California common law" and that the reference to the statute in paragraph 1 of the FAC "appears to be an inadvertent error, a holdover reference from the original Complaint." Dkt. 37 at 10-11 n.8.

Defendant acknowledges that trademark claims under California common law are evaluated by the same standards as federal trademark claims. Dkt. 25 at 22; *see also Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1100 (9th Cir. 2004). Accordingly, for the reasons discussed above in connection with Plaintiff's claim for federal trademark infringement, the motion to dismiss Plaintiff's claim for trademark infringement under California common law is **DENIED**. In light of Plaintiff's clarification of the scope of this claim (Dkt. 37 at 10-11 n.8), the Court **STRIKES** the reference in paragraph 1 of the FAC to California Business & Professions Code § 14200 *et seq.* Plaintiff's forthcoming Second Amended Complaint must not include this reference.

### C. Claim for Cancellation of Trademark Registrations

Defendant argues that Plaintiff's claim for cancellation of Defendant's trademark registrations alleges fraud and is therefore subject to Rule 9(b)'s heightened pleading standard. Dkt. 25 at 23-25. To satisfy Rule 9(b), a plaintiff must plead "'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). Plaintiff does not dispute that this claim sounds in fraud but argues that the FAC satisfies Rule 9(b). *See* Dkt. 37 at 11-13.

Fraud in the procurement of a trademark registration, which may be raised in civil litigation as a ground for cancellation of a trademark, "occurs when an applicant knowingly makes false, material representations of fact in connection with an application." *AirWair Intl. Ltd. v. Schultz*, 84 F. Supp. 3d 943, 951-52 (N.D. Cal. 2015) (citing *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006)). To allege a claim of cancellation based on fraud in the procurement, a party must allege: "(1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance. *AirWare*, 84 F. Supp. 3d at 952 (quoting *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013)). In addition to alleging these required elements of procurement by fraud, the heightened pleading standards of Rule 9(b) apply. *AirWare*, 738 F.3d at 951 n.3.

In the FAC, Plaintiff provides information about Defendant's registrations for the ZERO LABS and/or ZEROLABS mark, including the registration numbers and issue dates, and alleges that "[e]ach of those registrations claims a date of first use in US commerce of May 2016." Dkt. 21 (FAC) ¶¶ 32, 65. Plaintiff alleges that these registrations are misleading and were obtained by fraud because they claim a date of first use in 2016 and because fraudulent specimens of use were submitted in support of the applications. *Id.* ¶ 67. Plaintiff cites as a specific example a specimen submitted in September 2018 that was a "purported advertisement containing a link to Defendant's purported website." *Id.* However, according to Plaintiff, Defendant's public website as of December 2018 had a "coming soon" message stating that Defendant had not yet "publicly

8

launched." *Id.* Plaintiff also alleges that the Wayback Machine indicates that Defendant did not have a live website describing any product or service until April 2019. *Id.* Plaintiff asserts that "[t]his indicates that the advertising specimen materially relied upon by the USPTO Examining Attorney was not a real advertisement, but instead a mock-up that did not prove use in U.S. commerce" and "indicates that Defendant did not, in fact, use its mark in U.S. commerce prior to the date(s) that Defendant swore the mark was used in commerce." *Id.*

In the motion to dismiss, Defendant argues that these allegations are insufficient, for several reasons. First, Defendant argues that the status of its website at the time it submitted the advertising specimen is irrelevant because it "did not submit its website as its evidence of use—it submitted an actual advertisement." Dkt. 25 at 23-24. Second, Defendant argues that its alleged misrepresentation regarding its use of its marks in commerce is immaterial, and therefore cannot establish a claim for fraud in the procurement, because "a claimed first use date is neither fraudulent, nor fatal to securing a trademark registration if the mark was used in commerce at or before the time a declaration of use was filed." *Id.* at 24 (citing *Teeter-Totter, LLC v. Palm Bay Int'l, Inc.*, 344 F. Supp. 3d 1100, 1109 (N.D. Cal. 2018)). According to Defendant, "the relevant date that matters for purposes of a fraud claim is the date the statement of use was submitted" but the FAC does not contain any allegation on this point. Dkt. 25 at 24-25.

In its opposition to the motion to dismiss, Plaintiff appears to agree that the "critical question" is "whether the applicant was using the marks on the goods listed in the trademark application as of the date on which the applicant filed the Statement of Use." Dkt. 37 at 12 (citing *Standard Knitting, Ltd. v. Toyota Jidosha Kaushiki Kaisha*, 77 U.S.P.Q. 2d 1917, 2016 WL 173463 (TTAB 2006)). Plaintiff points to paragraph 67 of the FAC to argue that the FAC adequately alleges that Defendant did not first use its marks until after it filed its Statements of Use. Dkt. 37 at 12. The relevant portion of that paragraph states that the advertising specimen Defendant submitted in September 2018 "indicates that Defendant did not, in fact, use its mark in U.S. commerce prior to the date(s) that Defendant swore the mark was used in commerce." FAC ¶ 67. In its opposition, Plaintiff also provides the dates on which Defendant submitted Statements of Use to the USPTO. Dkt. 37 at 11. However, this information is not in the FAC.

The Court concludes that the FAC fails to adequately allege a claim for cancellation of Defendant's trademarks based on fraudulent inducement because it has not pleaded all requisite elements with the specificity required under Rule 9(b). Because Defendant has not demonstrated that amendment of this claim would be futile the Court **GRANTS** the motion to dismiss the claim for cancellation of Defendant's trademarks **WITH LEAVE TO AMEND**. Any amendment of this claim must plead the elements discussed above with specificity, including but not limited to identifying (1) the dates of the relevant Statements of Use; (2) each allegedly false statement in the Statements of Use (rather than simply an "example" (*see* FAC ¶ 67)); and (3) the factual basis for Plaintiff's allegation that these statements were false (*i.e.*, the factual basis for Plaintiff's claim that the marks were not in use as of the date of the Statements of Use).

## V.  CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss the claims for federal and state trademark infringement is **DENIED.** Defendant's motion to dismiss the claim for cancellation of Defendant's trademarks is **GRANTED WITH LEAVE TO AMEND.** Plaintiff may file a Second Amended Complaint ("SAC") by **May 17, 2023**. As discussed above, the SAC should not refer to California Business & Professions Code § 14200 *et seq.* with respect to Plaintiff's claim for California trademark infringement. Defendant's response to the SAC is due **14 days** after filing. The Court will hold an Initial Case Management Conference on **July 11, 2023 at 9:30 a.m.** A Joint Case Management Statement is due **July 5, 2023.**

**SO ORDERED.**

Dated: May 3, 2023

SUSAN VAN KEULEN
United States Magistrate Judge